May it please the court and counsel, I'm Charles Tyvett, and I represent the appellant, Jamie Walsh. This was a petition for adjudication of wardship that's being appealed in a disposition order that followed after the adjudication. The case basically presented by the state had two aspects. The first was an indicated finding from a Greene County investigation that had occurred nearly two years earlier. And that investigation actually resulted in a juvenile proceeding against six juveniles and then criminal charges against my client's husband, Justin, and the children who had made the outcry in that case, in fact, had recanted after about a year or more. And the Greene County State's attorney had spoken to both of the children independently at different times and then ended up dismissing the criminal case and withdrawing the petitions concerning the juveniles. In the meantime, in August of 2018, there was an outcry by the two youngest children, the 40s children who we're here concerning today. And they had been in foster care with an uncle and aunt, great-uncle-aunt, for over a year. And that was the second aspect of the proofs was concerning that outcry. And in this particular case, cases, Your Honor, in regard particularly to the proofs concerning the August 2018 outcry, that was concerning what they alleged happened to them prior to April 2017 when they were previously taken out of the home under the first investigation. Completely new set of allegations concerning my client, Jamie. There had been no allegations. You said there had been an outcry. Yes. Tell me what you mean. Well, by that I just mean that that's what Mr. Radcliffe from DCFS called it. The children had made a statement to their therapist who hotlined it. And they had actually been in counseling for over a year for lying initially. And then the fosters put them in counseling for what they thought was some sexual irregularities, the boys touching themselves, particularly Brandon, 40s. And so they had actually been in counseling for a long time before this supposed outcry. The other irregularity was that Mr. Williams testified that he had first learned from the boys of this abusive touching back a year earlier in June of 2017 and hotlined it. But Mr. Radcliffe testified he did a thorough investigation. There was no prior evidence of any hotline, no prior evidence of any alleged sexual abuse concerning mother or father from the 40s children. And so he had nothing except what the children provided him in August of 2018. He visited the children at Meckmeyer School. And the children, he said he showed them or talked to them about good and bad touches. And they said that they had had bad touches from their parents. And, therefore, he referred it for a CAC interview of the kids. It first was sent to the Greene County Sheriff's Office for investigation. And they spoke to Mr. Watts and Mrs. Watts, my client. And they both denied anything in regard to improper touching of the children. And the sheriff then recommended no prosecution, after which they had CAC interviews conducted. The problem was the state's attorney never presented the CAC interviews on the period. What they presented was Mr. Radcliffe's testimony. He testified he had not observed the CAC interviews. He had not seen the CD or DVD concerning the interviews. But he was testifying from the summary of what the person who conducted the interview summarized. And so he was really unable to relate any specifics where these touchings took place, other than at the home in Rockbridge, Illinois, where the parties had lived, whether they took place in a bedroom, in a bathroom. This was a small house lived in by two adults and six children, four of the children being older than the two fouries children here, none of whom had ever indicated in the prior investigation any kind of allegation of sexual touching of these two minors. In fact, in the prior investigation, these two minors had denied any kind of touching. There had been even a prior investigation of that a year earlier in 16, and they denied any improper touching in that case. So their outcries, so to speak, were suspect even by DCFS initially in this case. The problem was that we simply were not able to call and present witnesses. I filed some pretty substantial motions, one to transfer the case to Greene County because about half of my witnesses were from Greene County, about an hour and a half distance from the courthouse, and then a motion to dismiss based upon the Greene County's dismissal of the case, supported by affidavit of my client, supported by affidavit of Alyssa Denton, who had recanted the story and indicated that the four children had gotten together with their story initially and even manipulated the younger children into joining in the initial story. So that was made a part of the record from the very beginning. The case was set for 10 o'clock in the morning. We argued the motions until about 11.30. The state had a number of other things going. We didn't get to any evidence until a little after 2 o'clock. The state put on a witness. There was other matters heard, then put on another witness, and about 4.15, 4.20, the judge indicated it was getting late, asked what the party's position was about selecting another hearing date. The state's attorney indicated she had two more witnesses, one who was on medical leave, and she wanted to get them on, which was fine. I asked for a continuance at that time, but I didn't have any problem, actually, with letting her put on her other two witnesses. We went until 5.30, and then I asked for continuance at that time to go ahead and subpoena these Greene County witnesses in lieu of the denial of the motion to transfer. The state objected, and the court asked if I had subpoenaed those witnesses, and I indicated no. I mean, 40-some years ago, I subpoenaed about 15 witnesses on the first day of trial in a case and just had a cluttered courtroom. But my practice certainly has been to try to estimate how long it's going to take for the state to try their case and determine whether and whom I need to bring in and when. And so, in my mind, we had no date or time to really subpoena these witnesses, to bring them in, until the case was concluded by the state the first day. So the court basically denied my motion to recess at 5.30 and said, put on your witnesses. So I did put on Mr. Foray's, the father. He denied ever seeing any evidence of physical abuse or sexual abuse or seeing or hearing the children say anything. And then my clients both testified. I had no other witnesses there. So at about 7.30, I moved for continuance again, but again, because I had not subpoenaed those witnesses, the court refused to grant any recess. The court has made a couple of errors in its orders in this case, which I'd just like to point out to this court, errors of interpretation in regard to 705 ILCS 405-2-14B. That statute requires that a juvenile or an adjudicatory hearing be heard within 90 days of the filing of the petition and service or appearance of all the parties, the JAL and the custodian of the children. Excuse me, does that statute actually say that the hearing must take place or it must be commenced? Right. And so we commenced it. But after it's been commenced, there can be a continuance in the interest of justice. Yes, and the statute says that the court may do that in the interest of justice. And certainly this was a case where we had teachers, we had neighbors, we had others that had a lot of contact with the family and with these children that could have been presented to rebut the testimony that was submitted at trial and simply were not allowed to do that. But the court had indicated as a basis for denying the motion for continuance at 730 that he had to do that in order to comply with the 90-day mandate. But that was just error because we'd already complied with that. And then in looking at the record, we can't e-file in a juvenile case. We don't have access. We're an hour and a half from the courthouse. Looking at the record, I noticed that we didn't even have all of the parties initially summons. None of the parties were ever summons. Just a regular notice of hearing was mailed to the parties. The natural father, Jared, did not receive his mail, and so he didn't actually appear until January 4th, just over a month after the initial petition was filed. So we actually had until April the 3rd, by my count, to be within the 90 days. And the court, I mean, didn't check calendars to see if we could reschedule the next week, and that would have been, I indicated to the court that would have been adequate time to get these witnesses to court and make them available. The court and opposing counsel has indicated that my clients were reminiscent due to my lack of diligence and my failure to file a motion to continue supported by affidavit and so forth, pursuant to A3 of the statute, or excuse me, C of the statute. But in fact, subparagraph C applies only if you're trying to continue the case beyond the initial 90-day period. And we didn't try to do that. I did file a motion to continue two days before because initially I got a docket scheduling our motion to transfer and motion to dismiss before the adjudicatory hearing. Then about 11 days later, I got a docket indicating that was scheduled afterwards, and I was concerned about waiver. I tried to call the court, tried to call the state's attorney, tried to call GAL. Nobody would return a call, and so I was unable to do anything other than file a motion. The court did essentially grant that motion by hearing the motions first so that there was no waiver. So I'm not dissatisfied with that. I'm just dissatisfied with the fact that, you know, I've practiced 42 years, and I've never practiced in Bond County, but I've never been in a situation where the court or opposing counsel expected to begin and try a case of that nature with so many witnesses on the same day. Counsel, I don't know if this makes a difference, but was this on a Friday? It was, sir. And it only went to case for three weeks, is that correct? Yes, sir. Now, I think that when you entered your appearance, and I got a date of probably the 11th when it was file stamped. Yes. You file some interrogatories, request to produce documents to the state, and one of the requests was the names of some DCFS contract workers who had supervised the children's visits with the mother. Was that ever complied with? It wasn't. There was no objection to it. There was no compliance with it. We'd ask for the CAC interviews as well to examine those and possibly present them. Initially, there was another attorney who was appointed as counsel for my client, and after consulting with him, it was just clear that he had no background in the earlier proceeding, and I thought it was important that I go ahead and just enter my appearance pro bono in order to do that. Thank you. One question. Many times when we have a situation like this, the reason that you have this 90-day window is to make sure that kids don't linger and that they get to a stable situation as quickly as possible, but these two children were already in a secure situation, right, with the paternal uncle. Yes. So there was no emergency. No. Couldn't have been more secure. Thank you. Thank you both. Thank you. Thank you. Good afternoon, Your Honors. Counsel, may it please the Court. My name is Valerie Osment, and I represent the State of Illinois in this matter. The first thing that the Respondent alleges on appeal is that the trial court erred in denying the Respondent's oral motions to continue the adjudicatory hearing. The adjudicatory hearing was set to be on March 1st of this year, 2019, and from our calculation, they had the 90 days that they had until March 5th, 2019, because the Respondent, Jamie W., was served on December 5th last year, 2018. This was March 1st. This was a few days before the deadline for the hearing to be commenced. Counsel talked about his several oral motions to continue at the hearing itself. However, in his motion to continue, as you can find in the record, did not state under what basis or part of the statute that he was requesting a continuance under. So I believe, based on what the Court said in his order, that there was some confusion, whether it was 705 ILCS 405-2-14B or C. And as you can see in the Court's order on March 6th, 2019, and that's on the common law record at page 455, he specifically says that the Court notes, based upon this Court's busy schedule, if this hearing had been continued as requested, said request being made on the date of trial, this Court could not have complied with the mandate of B and C of that statute. So the motion to continue did not delineate exactly which provision that the continuance was being requested under. And all three times that counsel made the oral motion to continue, he also did not indicate under which provision of the statute that he was requesting the continuance under. So, and also, to Your Honor's question about whether or not the interrogatories were objected to, they actually were, and you can find that on the page of Report of Proceedings 45. This is when, before the hearing commenced, they were discussing all of counsel's pending motions, and the State's attorney, in reference to the motion to dismiss, specifically said, interrogatories and discovery in general, judge, as you know, discovery in juvenile cases are discretionary, and I would be objecting to his interrogatories, and I would be objecting to his request to produce. So there was an objection made. However, I never saw where the Court ruled on that, but as they continued with that hearing, before that, I believe is when the State actually pointed out that because counsel, the same counsel represented the same respondent in the Greene County case, he would have way more knowledge of this case than she would. So the information that he was requested, he would more likely have than the State would be able to provide. So assuming that counsel was acting under 705 with the letter C, which I thought was what he was referring to, as the Court thought as well in his order, I argued and pointed out several cases for this Court's attention, where similar facts were present. In N. Ray Stephen K., which is a First District case, an adjudicatory hearing was held, and there was a motion to continue in that case, and on appeal, the respondent argued that he should have been given more time to investigate a hospitalization of a minor in order to make an offer of proof, because this would have established materiality of the evidence. But the Court denied the motion, and on appeal, the appellate court reasoned that Illinois courts have long recognized there's no absolute right to a continuance, and because of that, the Court said that the First District didn't, or the trial court did not abuse his discretion, because the respondent moved for the continuance immediately prior to the adjudicatory hearing, which is exactly what happened in this case, and the respondent failed to provide the Court with an affidavit explaining the absence of material evidence. Not only did counsel fail to do that, he also failed to explain thoroughly why this evidence would have made a difference, and this Court should not remand unless the respondent can show prejudice. But as the Court laid out in his order, that even if the March 6, 2019 order, said continuance was not necessary to ensure a fair hearing, and he went on to note that he had the opportunity to listen to the testimony offered by the boy's uncle, Rick Williams, Bill Radcliffe, the CFS investigator, Nicole Eldred, Lindsey Perdin, and found them all to be compelling, credible, consistent, and corroborating regarding the issue of neglect and abuse, whereas the evidence offered by the respondent was, at times, inconsistent, self-serving, and incredible. Therefore, the Court had sufficient evidence to conclude that the State had met its burden in this case, even without these other people that the respondent was to call. The respondent is, as he admitted, did not file any subpoenas with the Court, and although he may have been practicing for some time, and normal procedure in his hometown courtroom might be, well, I like to try to predict if subpoenas are going to be necessary or not, and depend on the time of the day. With all due respect, it's not counsel's job to determine that. It is the Court's job to determine that, and the proper procedure would have been to file the subpoenas, and then, if the hearing was going to go over, to then request for the Court to extend those subpoenas. But he failed to do that. So the Court proceeded with the hearing, and they concluded it on that day. Therefore, the Court did not err in that situation, and this Court should not reverse on that grounds. The respondent's second argument is that the Court also erred in denying the respondent the right to present her theory of the case. So time and time again, throughout the State's evidence, counsel for the respondent attempted to ask certain questions of these witnesses about the two boys, Brandon F. and Jonathan F.'s older siblings, there's four of them, kept trying to ask questions about abuse allegations that may or may not have happened pertaining to them. Every single time the State objected, and every single time the Court sustained the objection, because they were not at this matter on those four other siblings, they were here specifically on Jonathan and Brandon. In the first witness that the State called, do you have certain testimony concerning the girls? Only as it related to what also was connected to Brandon and Jonathan. So because the two girls made allegations, Brandon and Jonathan were also included in that because they were siblings of others who were being sexually abused, and that was the extent of the testimony regarding the other children. Even though it had a different purpose, do you believe it opened the door to the Court inquiring into the whole situation of all the children? They did. All the children were half-siblings sometimes, but still siblings. Yes, Your Honor. However, all of those allegations were unfounded. That's why the Greene County case in general was dismissed, and then they did the Vaughn County case, but it only pertained to Jonathan and Brandon. The other siblings were not talked about more than the extent of what I just spoke about with explaining why they were mentioned in the first place, was because since they were being sexually abused, allegedly, because they were siblings with the two younger boys, that was a charge itself. That was the name of the charge was they were siblings of, I forget the exact terminology, but they were siblings of sex abuse victims, therefore they were also involved. Other than that, it was irrelevant, and the Court has substantial discretion on the invisibility of evidence, and this Court should not reverse, absent a clear abuse, if the trial court's reasoning was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court, and the State does not believe that it was an unreasonable decision to limit the evidence to just the matter at hand, which was the two youngest boys, Brandon and Jonathan. And if the Court has no more questions, the State will rest on its briefs. Thank you. Just briefly, I believe counsel is in here, or in the room, or in the room, or in the room, or in the room, or in the room, to make an interpretation of the commencement of the, when the 90 days begins to run. I mean, as I read the statute, all parties have to be, either appear in court or have received summons, not just my client, who was one of the respondents, and so I certainly disagree as to the start date of that. Secondly, in regard to the case of Stephen K., that motion to continue in the start date of that trial was five months after the petition had been filed, and all parties were in court, and so it was a completely different situation than this. It was already beyond the 90-day period, and the same with K.O. In the interest of K.O., that was cited by the State. In that case, it had been seven or eight months, and there had been three prior continuances, so it was just a completely different situation. And I just beg to differ with counsel on the evidence presented by the State. The State did submit testimony against Mrs. Watts that there had been ten indicated findings in the prior hearing against her and her husband, and so all of that, and that is admissible in evidence in a petition for a judicatory hearing, and so all of that, she indicated that, and then it was unfounded. Well, I mean, the court threw it out. DCFS never unfounded. In fact, they said it was founded, and that was one of the bases for the adjudication, so I disagree. I think the door was opened on that, and we should have been granted leave to present evidence rebutting, Your Honors. Thank you.